Good afternoon. Will the attorneys who are going to argue the case please approach the podium. Identify yourselves and the party that you represent and indicate to us how much time you want to reserve for your vote. It's Fred Marcus on behalf of Ford and I'd like to reserve maybe five minutes. Aaron Dozman on behalf of the Illinois Department of Revenue. You can reserve nothing. Okay. Very well. Have a seat. Now remember the microphone is for recording purposes only. It's not for amplification so if you want to be heard keep your voice up and everybody will enjoy the argument I'm sure. Mr. Marcus. Thank you your honor and may it please the court. This is a books and records case. The primary question on appeal before this court is whether the documentation Ford Motor Company presented at the administrative hearing was sufficient to establish the amount of interest income it earned from what we've called the State Street Bank accounts. The administrative law judge in his decision ignored the significance of Ford Motor Company's audited federal consolidated tax returns and the Ford Motor Company columnar's profit and loss schedules attached thereto and Ford Motor Company's state and local tax data worksheets and instead in concluding that Ford Motor Company had no books and records which identified the amount of interest it earned in the State Street Bank accounts. Focus primarily on Ms. Alexander's spreadsheet. More specifically this appeal presents two questions. The first is whether Ford Motor Company was obligated to provide a specific book and record or document which reflects the actual amount of interest Ford Motor Company earned in the State Street accounts. This is a question that requires a de novo review. The ALJ in its decision took an aggressive position and concluded that Ford Motor Company was required to provide actual statements generated by State Street Bank, the bank which had the Ford Motor Company affiliated groups marketable securities on which Ford Motor Company earned interest in issue. Nothing in our law requires such specificity. The second question is whether Ford Motor Company's audited federal consolidated income tax returns and its state and local tax data workpapers were sufficient to adequately reflect the amount of interest Ford Motor Company earned in the State Street accounts. Just out of curiosity, where would you get the amount of interest for the audited returns in the state and local ones? That came from Ford Motor Company's general ledger, which reflects the interest that had been earned in the Ford Motor, excuse me, in the State Street accounts by Ford Motor Company. But they got that number that they put in the ledger from some place, right? Yes, they did. What was the source of the numbers they put in the ledger? We presume those source documents came from State Street Bank, but they were not available at the time. At what time? At the time of this litigation, when this litigation commenced a couple of years ago. Were they available at the time that they made the entry into the ledger? They would have been used to make the entry into the ledger, but once that entry is made, they're no longer required. The general ledger of Ford's books and records are audited. The accounting firm that's responsible for auditing those profit and loss statements of the general ledger will issue its opinion, and once that occurs, it's assumed that the, not even assumed, but the books and records are deemed to be correct. There's no longer any reason to keep those source documents. What was the source of the spreadsheet then? Where did that information come from? The spreadsheet, the numbers in the spreadsheet can be tied back to a document, a specific document that is in the record. And those are the Columbia schedules that were attached to the Ford Consolidated Amended, excuse me, Ford Consolidated Income Tax Return. Individual profit and loss statements for each member of the affiliated group are attached to the Ford Consolidated Return. One of those profit and loss statements is Ford Motor Company's profit and loss statement. The interest that Ford Motor Company earned in total, which is the starting point for our calculation, would have been reflected on line five of that profit and loss statement that was attached to Ford Motor's Consolidated Federal Income Tax Return. That same number carries over to the L&A return. The Department of Revenue has never taken exception to that number. They've accepted that number. And it's reported on both the original returns and on the amended returns. And again, that's the starting point, never challenged by the Department of Revenue. Well, it's kind of challenged in this case, isn't it? Is it challenged in this case? They are not challenging Ford Motor Company's interest income as reported on its federal tax return and on its L&A combined return. And again, that number is not being challenged. That same number is on Ford's amended return, which creates the issue before this court. Those are really the same, though, because when the court does its state return, there's certain exempt interest that needs to be added back. True. Those are adjustments that are made to what we call line five income. But the starting point. The two numbers are exactly the same. The starting point is the same. So the federal interest number from line five carries over to line five on the L&A combined return, on the individual Schedule UB and the L&A combined return. And then there are adjustments that are made to that number to bring it to what state interest would be. But the starting point is the same. And the other point that I'll make at this point is with respect to the amended returns, the department never challenges the total interest that was reported by Ford Motor Company. The calculation that we've done takes it from Ford Motor Company total interest to the interest that was earned on the marketable securities in the State Street accounts. The only issue on the amended returns is really the character of that income, whether it's apportionable business income or allocable non-business income. That was the adjustment that was made on the amended returns that are in issue in this case. And so given that this was not done initially when the returns were filed, so you believe this was just simply malpractice on the part of the accountants? No. The returns were filed prior to this Court's decision in Home Interiors, which set forth the formula that's used to apportion income between business and non-business income. The years in the issue are prior to 2000 here. In fact, the last year in issue is 2000. 2004 maybe? 2000? No, the last year in issue in this case is 2000. The amended return was 2000? Correct. The Home Interiors case was decided in 2000, in which Illinois or this Court said that yes, there is in fact a formula that can be used to distinguish between apportionable business income and allocable non-business income. And following the rendering of that decision, amended returns are filed. The two, I think it was 41 and 81 were the numbers. 51 is the one that was? 51 is the daily. The daily. Those other two, it's your position, those are 100% non-business related, right? Because they never touched them over the whole time. According to Mr. Tosh, those accounts were never invaded to satisfy a shortfall in 51. So that case you just mentioned wouldn't affect that, right? That's just 100%. Well, it is 100%, but we have, in our calculation, commingled the accounts because we could not break out the interest that was earned on 41 and 81. So as a result, we've commingled the interest earned on all three accounts, made the appropriate adjustments to account for interest that was attributable to other types of securities other than those held in the State Street accounts and by other members of the group in arriving at what we believe to be a figure that represents the interest income that was earned in the State Street accounts by Ford Motor Company. But that's what the hearing officer had a problem with, right? We couldn't tell what went to what account, what went to what partner, and actually how much it was because we didn't have, And I just don't understand why we didn't have the statements, 2004, when we're filing an amended return. Unfortunately, there's nothing in the record that would reflect why we don't have those statements. But let me address the two questions that you did raise. With respect to the partnerships, the other participants in these State Street accounts, there are two ways that we could have approached this problem. Granted, we don't have the original source documents, but I don't think that they're absolutely necessary if we can prove by other creditable evidence what that number is, which is exactly what we've done. With respect to the partnerships, there are two ways, again, of approaching the problem. Well, you know, you say you did that, but my understanding of basically tax law and auditing is that if I'm reporting my income and I want to take certain allowable deductions, if I'm auditing, I have to verify those deductions. I just can't say, yeah, well, I had records and I threw them away and it was $1,000. And this is pretty much what you're trying to do here. You're saying, I previously asked for or took a deduction of X dollars, and now I want to amend the term and increase that deduction, correct? That's correct. Okay. So every tax law that I know of, I'd have to substantiate that. That's why the rules and regulations provide that the taxpayer has to keep records that can substantiate their income and or claim deductions. Here, your specific deduction that you want to increase through your amended return, you don't have the underlying documents to support your claim for deduction. And that sort of runs counter to the requirement that the taxpayer maintain records to justify what they're doing in the event it's questioned. I think the question you're raising, though, is what kind of or what type of document must we maintain? Under the Income Tax Act, specifically Regulation Section 100.9530.B, there is no particular form that requires the keeping of for income tax purposes. So we're not requiring state, that's a state regulation. It specifically says there is no particular form in which we must keep our books and records. And what I'm suggesting is that there's more than one way to establish or to present competent evidence that proves what interest income is that is attributable to these accounts. In fact, there are two ways of doing it. The first, as Judge Griffin indicated, is with respect to the partnerships. There is a point in the record which indicates that because we don't have the partnership agreements, that we can't identify the interest that was earned by other participants in the State Street accounts. And what the department and council is requiring is that we have the specific record issued by State Street Bank, which would have indicated the interest earned in each of those accounts. Unfortunately, because there is more than one participant in each account, that statement from State Street Bank would not have established Ford Motor Company's interest. Is it true that all the participants in all the accounts are all Ford affiliates? I believe so, yes. One is a charitable organization, though, that a number of the Ford affiliates participated in these accounts. They're all Ford related? Yes, absolutely. All right. My point is that even if we had known the partnership percentages of the various members of the group, one, they're going to change either day to day, week to week, or month to month, because the cash in the accounts is going to change on that basis. So knowing what percentage they may have had on any particular day is not necessarily going to be helpful. And two, again, the document that would have been or might have been provided by State Street Bank would have told us or given us the information that the ALJ was looking for in his decision. Again, we still would have had to do some calculation. The other way of approaching the problem is to start with what we know to be Ford Motor Company's interest income, because it's represented in an audited federal return, which the state has accepted. We don't know it, and I was just trying to find in my notes, but at one point one of Ford's witnesses said, when you're done with this hearing and you rule in our favor on the AHC, I think. AHP. AHP, I'm sorry. I'm sorry. At that point, we'll have to determine what the actual numbers are. I mean, that's. . . I don't. . . So we didn't even know. . . Let me try and explain that. That was done in conjunction with these amended returns. Right. And the question that's raised is whether or not we were required to establish the actual number that was placed on the amended return representing the refund that was sought. And the answer to that question is no. The Department's regulations, and I believe it's 100.9400, requires that all we need to really do on an amended return is to timely, and by timely I mean within the statute of limitations, and there's no issue here with respect to whether or not the statute of limitations had run, is to timely put the Department of Revenue on notice as to what the underlying issue is or what the claim is based upon. And then, of course, we're going to put a number on that return. The regulation goes on to require the Department to audit the return, determine not what the refund is, but what the proper tax is in that particular year. And then once it determines what the proper tax is, to look at what's been paid, and if it exceeds what the proper tax is, refund the balance regardless of what may be on the amended return, and if it's less than the proper tax, then deny the refund claim. That's how the system works. And just so we're clear, we're dealing with estimates here, because even four does not know what amount was owed. Is that correct? Well, you can call it an estimate. That's what it is? I would suggest that it's an estimate based upon actual documentation and actual numbers that are in the return, excuse me, in the record. Yes, there's a calculation, but it's not based on incomplete information. It's based on forwards, books, and records. It's based on an estimate. You can call it an estimate. On page 7 of your reply. We can call it an estimate. So if the department is not satisfied with that and choose to provide you with corrected numbers and it goes before the administrative law judge, who is to decide what's competent evidence? The administrative law judge is to decide what competent evidence is. But if the department determines that our number is not the correct number and comes up with another number, again, if it's less than what we set on our amended return and we can't prove our burden, we recognize that. If we can't prove their calculation is incorrect, we're not entitled to a refund. I'm getting to a point somewhere. So really the question here is whether or not the administrative law judge is, and again, you agree with this, I believe, on page 2 of your brief, is whether or not the administrative law judge was clearly erroneous in finding that they were not going to accept the documents that you've provided. That spreadsheet, I know they focus a lot on the spreadsheet. They don't believe they should have. But am I correct? That's what their position is, correct. You state also that in your reply brief that that's correct. Let me speak to the spreadsheet first. The spreadsheet was never intended to prove our point. The documents behind it were intended to prove our point. The spreadsheet was designed as a tool which would enable the administrative law judge or the administrative hearings division to see all the information in one place. But as I indicated before, every number on that spreadsheet can be tied back to a specific number that's in the record. The other thing, I think, ultimately the question is, and the reason I mention there are two issues here, two questions. The first question, which I believe requires a de novo review, is are we required to provide a specific document, or can we prove our point, prove our case, with other competent evidence that's available at the time? And that other competent evidence in this particular case are the amended federal tax returns, which were accepted by the Department of Revenue, no change, and the R&L return, which picks up the same number. Excuse me. The second question is whether or not you've provided competent evidence. Right. That question will be a mixed question, correct? Correct. So if you were to decide the first question in our favor, then we move on to this second question. But if you decide the first question against us, if we were required to provide that specific document, and I can't think of any case law that requires that, then this case is over at that point. And maybe you're correct about that. So if you are correct, tell us how do we find that the Department's decision is clearly obvious? You believe that is the standard of review. The Department disagrees with you, we realize that. I would suggest that it doesn't matter what the standard of review is. Once we get past that first question, whether or not we need to provide a specific document or other competent evidence to prove our case, that the standard of review doesn't matter. Because I would suggest at that point, regardless of the standard of review, we have overcome the Department's prima facie case and shifted the burden back to the Department. With your spreadsheet? No, not the spreadsheet. I think it's pages 16 through 18 and then 20 through 22 of our brief. We have recalculated the interest based upon the records that are contained in the document, in the record, without use of the spreadsheet. And also without use of bank statements, without use of a primary source. Correct. Which is what those bank statements would be. Primary source. And money would be a primary source. And it would also be something extrinsic, other than just saying, hey, this is what it is. True, but again, the Department has accepted the interest that we reported on the Ford Motor Company P&L attached to the Federal Consolidated Return. The adjustments that we have made are based upon Ford Motor Company state and local tax data worksheets, which themselves, there are references on these worksheets, tie back to the general ledger. There is a trail here. Moreover, if you look at, and I can find the specific sites, I used 1999 as an example. The 1999 state and local tax matter work paper lays out all the individual categories of interest that Ford Motor Company earned during the 1999 year. And the total of the interest, all the individual types of interest that it earned, tie back to line five of the Federal, or the Profit and Loss Statement attached to the Federal Consolidated Return, and line five on the Schedule UB. Ford Motor Company, line five, Schedule UB. So, those numbers tie out, and what I'm suggesting is that the audited Federal tax, the audited Federal Consolidated Tax Return and the state and local tax work papers are closely associated with Ford Motor Company's, excuse me, Ford Motor Company's books and records, and provide another path. We think it's competent, we believe it's competent. It provides another path to the interest that Ford Motor Company earned in the State Street Bank accounts, other than the specific statements. And again, and I mentioned this earlier, having those specific statements would not have solved this problem. The specific statements that would have been issued by State Street Bank... I don't know if I agree with you about that. The hearing officer didn't seem to agree with that. Well, he doesn't agree, but we have these accounts at State Street Bank, and let's use a bank account that you may have as an example. When the bank that you're saying this account is at issues its statement, it issues a single statement saying what the interest was earned. Now, this is a corporation, so we're not going to go to 1099, there's no requirement, but we probably would have gotten a statement indicating the total interest that was earned in each one of those accounts. The problem is that the bank, State Street Bank, doesn't know who the participants in the accounts are, so they issue a single statement which sets forth the total interest that was earned in that particular account. Once we get that statement, we then have to break the interest among the various members of the Ford-affiliated group who participated in that account. So, again, there isn't a single document which the ALJ was looking for. There isn't a single document that's going to provide us with the number that leads us to the result. And I think we're out of time, but I think that was also noted, that there was no partnership agreement as to the breakdown, and there were no materials as to deposits into it. And those are all kind of fundamental. Mr. Marcus, do you have anything else you'd like to add? If I may just address this last point. Briefly, because your time is up. Again, with respect to the partnership agreements, they really wouldn't have mattered because it wouldn't have enabled us to effectively calculate the Ford Motor Company interest because the percentage interest in the accounts changed from time to time as a result of the cash balances changing. Very simply, the approach that we have taken begins with Ford Motor Company interest income, is adjusted by Ford Motor Company interest income, and results in Ford Motor Company interest income attributable to those accounts. We think it's a more accurate calculation. Thank you.  Mr. Dozman. Please, the Court. I'm Assistant Attorney General Aaron Dozman. I represent the Illinois Department of Revenue. Illinois law requires taxpayers to keep and retain books and records sufficient to substantiate the tax numbers that they submit in their tax returns to the department. And Ford has admitted in its briefing, a friend on the other side admitted today, that they don't have those books and records. So without those books and records, Ford is unable to show the department how much investment income they earned in three accounts, the State Street accounts. And without knowing that total amount of investment income, we can't begin to decide whether some portion of that gets carved out as non-business income. So we don't know the total size of the pie to even begin determining if there's some slice that gets taken out. Without those books and records, which is a fundamental and just well-settled requirement in Illinois, there is no way to rebut the department's prima facie conclusions that no business income deduction is warranted. And I'll point out, in addition to admitting that they don't have the books and records, they are presuming that a general ledger, this Line 5 from their federal return, is a book and record sufficient to make their case. And what they want to do is take Line 5 off their federal return, which is all investment income, and then subtract out of there everything that is not the State Street accounts. And they aren't really even able to do that because they don't have total books and records to come at it from whittling everything away that's not State Street accounts. And that wouldn't be proper anyway because with a books and records case you show your case from the ground up, from the receipts, from the statements up. And we know that these records existed because Dennis Tosh, who ran these accounts day to day, testified that he did have the information. He had the partnership agreements. At what point? At the latest, how long did he have them? He got a daily report from the bank. Right, but did he have them at the time of the hearing? Did he have them at the time they filed their amended return? We don't know that. No, it remains a mystery how they came to the numbers in their 2004 tax return because the numbers that they submitted at the hearing weren't even proving up the numbers on those 2004 tax returns. They didn't match. They show up at the hearing with a new set of numbers, which is based partly on Ms. Alexander's spreadsheet, partly on the expert Bernard Pumph's report. But mostly they relied on the interest formula. And that is considered a reasonable method of estimating their income. I disagree. The requirement is substantiate. But their expert testified that it was a reasonable way. What the expert testified on was the reasonableness of this AHP formula. And the AHP formula is what you need is the investment income numbers first to run it through the AHP formula. And the AHP formula spits out a, parses it between business and non-business income. We don't even get to that point in this case because we don't know what numbers to run through the AHP formula. So that's really where this case fails to get off the ground is we just have a fundamental evidentiary problem in this case. It is a poor vehicle to decide if the AHP formula or whatever formula is appropriate for Ford's business to decide whether there is some non-business income deduction warranted there. That point being said, I want to stress that the director did not make a decision, any conclusion on the propriety of the AHP formula. We were careful not to say anything about that in our brief. But it was contested by the department at the hearing that this was even appropriate in this case because I think Justice Griffin, you asked about TI-41 and TI-81, those other two accounts that weren't touched. I don't think that's necessarily accurate. What Dennis Tosh described is that money came in through the TI-51 account and out through the TI-51 account, but that was the entry and exit of all money, but then it was moved around between those mid- and long-term accounts. How do you respond to what counsel said about the fact that the department did not challenge the amount previously, the amount of interest, I guess, that was shown on the original? I think he's talking about line five of the federal return, which is total investment income for Ford. And that includes much more than just the State Street accounts. That total number is not contested. The total amount of income that they reported on their taxes. That's not an issue either, right? It's not an issue. So you wouldn't contest something that's not an issue. Right. And I believe that state tax and the federal one, they have to report the same investment income, total income. So not contesting that, it's how they arrive at the three State Street accounts. How much investment income did Ford earn from that? And the two evidentiary problems here are figuring out what that number is, and then secondly, even if they knew in each account what it earned per year, they would need to figure out which partners' cash went in and then what the respective partnership shares would be. So it would be complicated to figure that out, but it has to be, it can be based on actual numbers. These are taxes. They're based on definite knowable numbers. It's based on income. Your bank statements don't guess how much money is in your bank or they don't estimate how much interest you earned. These are definite knowable figures, and that's why we have the books and records requirement, contemporaneously created records that document a business transaction. And the department has no way of creating them for you. We don't, the department doesn't micromanage how businesses conduct their business, but the regulations have to account for all these different types of businesses from Ford to the Chinese restaurant that pays Illinois income tax, which was at issue in that Chuck Vihau case, which I cited in supplemental authority to this court. We have to have regulations that contemplate all of this, and it has been a long-held requirement in Illinois that you retain your receipts, you retain your statements, so that when the department calls on you to prove up the numbers in your tax return, you show up with the receipts, and there's no debate about estimations or subjective determinations or memory. Let me make sure I've addressed everything I... Well, counsel says that the standards of review here is clearly wrong. It's a question of fact and law. And in your brief, you state that it's de novo. I disagree because the question that the director decided this case on is a factual question. What is the investment income? The answer to that... I apologize. I said you said it was de novo. You said it was manifest rate. Manifest rate, yes. Thank you. Yeah. What is the number? That is a factual determination, and you have to arrive at a number and show your work. Counsel may be on to something when you say the real issue here is what documents are necessary. What books and papers are necessary? Well, in the... I can answer that two ways. I can answer it in the abstract, and then I can answer it concretely based on the facts of this case. In the abstract, it's physical or electronic records that evidence contemporaneously the business transaction that they purport to show. Receipts, statements, and the like. In this case, it would be what Dennis Tosh testified that he had at one point. They received reports from State Street Bank, and they are the one... Ford is the one with the relationship with the bank, and I don't know why they can't call up the bank and ask for these records, but it's incumbent on the taxpayer to come forward with those books and records, and it is a statutory requirement, and that statutory requirement has been around for decades. So if you are conducting a business and you are paying into income tax in Illinois, it's no surprise that you need to be able to show your work for your tax returns supported by evidence tied to your books and records. So with that, I think... Let me make sure I don't miss anything. Unless the Court has any further questions, I think I've made my point. Thank you. We ask that this Court affirm the Circuit Court affirming the Director's decision. Thank you. Thank you. Mr. Marcus. Thank you. A few points I'd like to address. First of all, I don't understand how the amount of interest that Ford Motor Company... And again, we need to draw this distinction between Ford Motor Company itself and the other members of its affiliated group. But I don't understand how the Department can argue that the number or the amount of interest earned by Ford Motor Company itself or from the investments in the State Street account remain a mystery. If we can't prove by a specific document, and again, that document doesn't exist, even if we could have produced it, it wouldn't have given us the number that the Department is demanding that we provide. But the calculation, our interest formula, our interest calculation, is based upon documents that are in the record, which are closely associated with the taxpayer's books and record. I don't think there's any question about that. But it's closely associated enough? I think so. For starting with Line 5, we know Line 5 is Ford Motor Company's on its Columbia Profit and Loss Statement. The Profit and Loss Statement attached to its consolidated return. We know that that is the total amount of interest that Ford Motor Company has earned. Total on everything, every type of investment that they may have held. We also know from the State and local tax work papers that come from the general ledger and are referenced to the general ledger what the categories of interest are. From Mr. Tosh's testimony, we know the type of securities that were held in the State Street accounts. So if we know what's in the State Street accounts, and we know all of the types of securities that Ford Motor Company held, if we break out those that are attributable to something other than marketable securities, we end up with Ford Motor Company interest earned on the investments in the State Street accounts. And it's a more accurate calculation because we start with Ford Motor Company interest, we adjust it with Ford Motor Company interest that was earned on other types of investments, we make further adjustments with Ford Motor Company interest, and those are adjustments that are required by the Illinois Income Tax Act, leaving us with nothing but Ford Motor Company interest earned on the marketable securities in the State Street accounts. At least 80 to 95 percent. Well, that is Mr. Tosh's estimate. I think that our calculation is more accurate, or Ford Motor's calculation is more accurate than Mr. Tosh's estimate. With respect to the expert witness, he specifically testified not only to the application of the formula, but he believed that the interest formula that Ford Motor Company used to identify the interest in the State Street accounts that it earned was a reasonable method of establishing that interest. With respect to the AHP formula, that's not an issue here. The issue before this court is whether or not our starting point, whether or not Ford Motor Company, with its documentation, stipulated federal tax returns, and again, I think stipulating to those returns means something, and the state and local tax paper, state and local tax data, it's about full, book papers, which were admitted into the record as business records, enabled us to apply our interest calculation and arrive at interest income attributable to the accounts. The three accounts. Counsel suggests that perhaps there were transfers between the accounts. There were transfers between the accounts. TI-51, it's not T1-51, it's TI-51, which is the account that represented the daily ins and outs. Cash from the sale of vehicles comes in the account. Cash for payroll and payments to suppliers goes out of the account. To the extent that there's excess cash, that is invested in securities in 51. As cash continued to build throughout the 90s, these are very profitable years for Ford Motor Company, Mr. Tosh explained that they decided that they could obtain a greater return by taking some of that cash and moving it to TI-41. TI-51, three to four month maturity, TI-41 has a one year maturity, those securities, and then as cash continued to build, they then moved cash to TI-81, which was a two year maturity. What Mr. Tosh explained is that, yes, there were transfers between the accounts. There were transfers from 151 to 141 and possibly from 141 to 181, but there weren't transfers going the other way. If outflows exceeded inflows in TI-51 on a daily basis, securities in TI-51 would have been sold to cover that shortfall. What Mr. Tosh explained was that TI-41 and TI-81 were never invaded to cover a shortfall in TI-51. What he did explain was that there were transfers between 41 and 81, and to keep my numbers straight, the goal here in his words was to maintain a one year average maturity. So you would have seen transfers between those accounts on a monthly basis, if at all, to maintain that average maturity. But again, Mr. Tosh indicated there was nothing that moved from 141, I'm making the same mistake I just said not to make, but from 41 and 81 to 51. Cash did not move that way. Your rebuttal time is up. Do you have anything else you want to hit on briefly? Just in closing, I think that Ford Motor Company has provided enough evidence, to establish what interest is earned in the three accounts, and that it has produced enough evidence to attempt or overcome the department's prima facie case, and at that point the department has done nothing. They have not offered any evidence at hearing to attempt to meet their standard of proof once we have shifted the burden of proof, which I believe we've done with the information that we've included in the record. With that, I will thank you. Thank you both for your briefing on this topic. We'll take the matter under advisement.